Leigh A. Parker (170565)
lparker@weisslawllp.com
**WEISSLAW LLP**
1516 South Bundy Drive, Suite 309
Los Angeles, CA 90025
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff Tammy G. Federman*

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY G. FEDERMAN, Derivatively on Behalf of American Apparel, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> DOV CHARNEY, ALBERTO CHEHEBAR, DAVID DANZIGER, ROBERT GREENE, MARVIN IGELMAN, WILLIAM MAUER and ALLAN MAYER, <br><br> Defendants, <br><br> and <br><br> AMERICAN APPAREL, INC., a Delaware Corporation, <br><br> Nominal Defendant. | Case No. <br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br> JURY TRIAL DEMANDED |

Plaintiff Tammy G. Federman, by and through her undersigned attorneys, hereby submits this Verified Shareholder Derivative Complaint for the benefit of nominal defendant American Apparel, Inc. ("American Apparel" or the "Company") against members of American Apparel's Board of Directors (the "Board") in connection with their breaches of fiduciary duties, and the aiding and abetting thereof.

## NATURE AND SUMMARY OF THE ACTION

1.    This derivative action arises from the breaches of fiduciary duties owed by the directors of American Apparel to the Company and its shareholders.  Defendant Dov Charney ("Charney"), the founder, Chairman of the Board, and Chief Executive Officer of American Apparel, engaged in a systemic and flagrant course of unlawful, imprudent, and egregious conduct and ignored his responsibilities to the Company and its shareholders.  His actions, and the lack of oversight by the other directors, harmed the Company's operations and financial condition.   Among other things, Charney misused corporate assets, misused his executive position, and violated the Company's sexual harassment and anti-discrimination policies.

2.    The Company's directors and officers knew of Charney's misconduct, and knew or recklessly disregarded that it was wrong and harmful to the Company, but ignored the misconduct in spite of numerous red flags, failing to exercise

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

reasonable and prudent supervision over the management, policies, and internal controls of the Company.  The Board failed to take timely action because Charney, as the largest shareholder of American Apparel, was largely responsible for their attainment and retention of their Board seats.

3.     Through this action, Plaintiff seeks to recover from the Defendants, for the benefit of American Apparel, the damages they inflicted upon the Company and to prevent further damage to the Company's operations, financial position, business prospects, and reputation.

4.     The damage inflicted upon the Company includes financial and personnel problems, including, but not limited to, the sharp drop in the price of American Apparel stock, a sharp increase in the Company's cost of borrowing money to as high as 20%, the near loss of its listing on the New York Stock Exchange ("NYSE"), and its inability to recruit and retain executive-level personnel.  These red flags should have caused the Board to investigate the management of the Company and to institute appropriate procedures to recruit and retain competent employees able to effectively manage the Company.

5.     On June 18, 2014, the Board offered to Charney that, if he resigned from the Board and as CEO, he would be retained as a consultant for four years at an annual salary of $1 million.  At the end of that time, he would receive a severance package and cease all roles at the Company.  It was only after Charney rejected this offer that the Board took steps to terminate Charney's Board position and

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

employment.

6.     The Board caused further damage to American Apparel in the way it took steps to terminate Charney by failing to ensure that this action did not trigger a repayment acceleration of its loan with Lion Capital LLP ("Lion").  By failing to successfully get this repayment acceleration provision waived before it met with Charney on June 18, 2014, the Board risks American Apparel becoming bankrupt or insolvent.

7.     In addition, the Board failed to timely adopt defensive measures to block Charney's increase in his holdings of American Apparel stock after his suspension to approximately 43% of the Company's outstanding shares.

8.     As a result of the Defendants' conduct, American Apparel has been irreparably harmed.  Given the numerous red flags of improper conduct, the magnitude and duration of the improper conduct, and the substantial likelihood of liability of American Apparel's directors, a demand to pursue action to recover from the Defendants the damages they caused American Apparel would be a wasteful and futile act.  Absent this lawsuit, the wrongdoers will not be called to account for their improprieties, and the Company's substantial damages will not be recovered.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

States.   This action was not brought collusively to confer jurisdiction on the Court that it would not otherwise have.

10.   This Court has jurisdiction over each of the named Defendants in this action since each is either a corporation that conducts business in and/or maintains operations in this District, or is an individual with sufficient minimum contacts with this jurisdiction so as to render the Court's exercise of jurisdiction over them permissible under traditional notions of fair play and substantial justice.

11.   Venue is proper in this District pursuant to 28 U.S.C. §1391 because, among other things, the Nominal Defendant is headquartered in this District and because many of the acts alleged and complained of occurred in this District.

## THE PARTIES

12.   Plaintiff Tammy G. Federman ("Plaintiff") is, and was at all times relevant hereto, a shareholder of American Apparel.  Plaintiff is a resident of Texas.

13.   Nominal Defendant American Apparel, Inc. is a corporation duly organized under the laws of Delaware and maintains its principal executive offices at 747 Warehouse Street, Los Angeles, CA 90021.  American Apparel manufactures, distributes, and sells clothing for men, women, and children.

14.   Defendant Charney has been Chairman of the Board, CEO, and a director of American Apparel since 2007.  He has been suspended from all of

his roles at American Apparel since June 18, 2014. Between December 2007 and October 2010, he was President of the Company. He was Chief Executive Officer, President, and a director of American Apparel's predecessor company between its founding in 1989 and 2007. Charney is also the largest shareholder of American Apparel, owning approximately 43% of the Company's outstanding shares. Upon information and belief, Charney is a resident of California.

15. Defendant Alberto Chehebar ("Chehebar") has been a director of American Apparel since 2012. He is a founder of and director of Stilotex S.A. since 1992. He is also a partner of Pepe Ganga since 2006 and a partner and director of Blu Logistics since 2008. Upon information and belief, Chehebar is a resident of Colombia.

16. Defendant David Danziger ("Danziger") has been a director of American Apparel since 2011. He is also an accountant and senior partner at MSCM, LLP, Chartered Accountants and a director of Eurotin Inc., Carpathian Gold Inc., and Renforth Resources, Inc. Upon information and belief, Danziger is a resident of Canada.

17. Defendant Robert Greene ("Greene") has been a director of American Apparel since 2007. He is a private consultant, as well as an author of business strategy books. Upon information and belief, Greene is a resident of California.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

18.  Defendant Marvin Igelman ("Igelman") has been a director of American Apparel since 2011.  From February 2010 to June 2011, he was Chief Strategy Officer of Poynt Corporation and, from May 2006 to February 2010, he was Chief Executive Officer of Unomobi Incorporated.  Upon information and belief, Igelman is a resident of Canada.

19.  Defendant William Mauer ("Mauer") has been a director of American Apparel since 2011.  He is also a partner at the law firm Lapin Mauer and, since 2008, Governor of the Bar of Quebec.  Upon information and belief, Mauer is a resident of Canada.

20.  Defendant Allan Mayer ("Mayer") has been a director of American Apparel since 2007.  He is a partner of 42 West LLC, a public-relations firm. From 1997 until 2006, he was managing director of Sitrick and Company. Upon information and belief, Mayer is a resident of California.

## **DUTIES OF THE DEFENDANTS**

21.  By reason of the Defendants' positions with the Company as directors and officers, which gives them the responsibility to control the business and corporate affairs of the Company, the Defendants have at all times owed to American Apparel the highest fiduciary obligations of good faith, loyalty, and due care.

22.  Defendants, consistent with their fiduciary duties, were and are required to act in furtherance of the best interests of American Apparel and not in furtherance of their personal interests or benefit.

23.  Each Defendant has at all times owed to American Apparel and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company, in the use and preservation of its property and assets, and to uphold the highest obligations of good faith, loyalty, due care, and fair dealing.

24.  To discharge their duties, Defendants were required to exercise reasonable and prudent supervision over the management, policies, and internal controls of the Company.

25.  The conduct of the Defendants complained of herein involves a violation of their fiduciary duties, the absence of good faith on their part, and a knowing, reckless, and grossly negligent disregard for their duties to the Company that Defendants were aware or should have been aware posed a risk of serious injury to the Company.

## SUBSTANTIVE ALLEGATIONS

26.  In March, 2014, after the Company's operations, financial position, ability to borrow necessary funds, business prospects, reputation and stock price suffered significant declines because of Charney's systemic misconduct and the

Board's refusal and failure to address it, Charney's fellow Board members initiated an investigation into Charney.

27.  On June 18, 2014, the Board met with Charney.  At the end of the meeting, the Board suspended him until July 19, 2014, at which point his employment with American Apparel would be terminated unless he could cure his misconduct.

28.  Before suspending Charney, the Board made him an offer that would allow him to resign from his current roles and accept a consulting position with the Company.  This proposed position had a salary of $1 million per year and a duration of four years.  At the end of the four years, he would leave the Company entirely and receive a severance package.  After Charney refused to accept that offer, the Board suspended him from his duties with the Company.

29.  On June 18, 2014, the Board gave a letter to Charney informing him of his suspension (the "Suspension Letter").  In the Suspension Letter, the Board cited several instances of misconduct.  The Board first cited Charney's knowledge of an employee's plan to post nude photos of one of Charney's victims on the Internet and his failure to prevent that posting, even though it was within his power to have done so.  The Board noted that an arbitrator awarded damages against American Apparel based on this incident, which was reported by *The Wall Street Journal* to be $700,000, and that American Apparel would probably be forced to settle similar claims, costing the Company more money.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

The Board accused Charney of allowing the employee to post these pictures because it was personally beneficial to him, even though it harmed the Company.

30. The Suspension Letter further charged Charney with violating the Company's sexual harassment and anti-discrimination policies. The Board noted that Charney's behavior caused several recent arbitration awards against American Apparel, in addition to the money spent defending the cases, and caused American Apparel's employment liability insurance premiums to increase from $350,000 to $1 million per year. It also noted that not only did Charney refuse to attend sexual harassment training himself, he interrupted California-mandated sexual harassment training that was being given to American Apparel employees.

31. According to the Suspension Letter, Charney also misused corporate assets. He authorized severance packages to former employees and authorized raises and bonuses for current employees in exchange for legally-binding agreements that protected him from personal liability for sexual misconduct, but did not further the interests of American Apparel. The Board also accused him of using Company money to purchase airline tickets for his parents' personal use. *The New York Times* and *The Washington Post* reported that he also used, and allowed his friends to use, American Apparel corporate apartments for personal reasons.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

32.   In addition to the specific allegations leveled against Charney in the Suspension Letter, American Apparel has been experiencing financial and personnel problems for several years.   American Apparel's stock price has plummeted from $15.00 per share in 2007 to a low of $0.47 per share in early 2014.   Also, American Apparel has been forced to pay interest rates of up to 20% to borrow money during a period of historically low interest rates, according to *The Wall Street Journal*.   Some financial companies have even refused to lend American Apparel money at any interest rate, according to *Slate*. Furthermore, according to *The Los Angeles Times*, American Apparel nearly lost its listing on the NYSE earlier this year.

33.   Moreover, as reported by *The Wall Street Journal* and *The New York Times*, Charney has caused a severe shortage of personnel, especially senior personnel and executives, at American Apparel.   Charney's mismanagement has made it extremely difficult for American Apparel to attract and retain qualified people.   As a result, the Company's employees have had to perform important tasks for which they were entirely unqualified.   Indeed, at one point, the General Counsel of American Apparel was "personally managing the company's fleet of stores."   At another point, there was only one attorney employed by the Company, which has 249 stores and 10,000 employees.   Charney, himself, was also performing inappropriate tasks for his position.   He spent a period of time in 2013 personally running a distribution center, including loading trucks.   He

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

also personally signed all of the checks by which the Company paid its bills, causing a massive backlog.   Even with this personnel shortage, in 2013, Charney chose to fire many people in the finance, production, fabric receiving, and legal departments.

34.   The Board has long known and has recklessly ignored these and other problems with American Apparel's operations, finances, management, and personnel.   The Company's stock price was falling precipitously, the Company had a very high cost of borrowing money, and many senior management positions were remaining unfilled.   The combination of these factors should have caused the Board to investigate how Charney was running the Company and, based on that investigation, to implement policies that would have caused the Company to hire and retain executive-level employees who would have been able to manage the Company effectively, lowering American Apparel's cost of borrowing.   By turning a blind eye to the negative impact of Charney's conduct on the Company, the Board permitted the damage described herein to the Company's operations, financial position and reputation.

35.   The Board members had personal reasons to delay initiating an investigation into Charney:   Charney is the largest shareholder and he voted for each of them when they were last running for election to the Board.   The Board members were dependent on Charney to retain their positions on the Board. The Board has shown its willingness to favor Charney over the interests of the

Company.  Even after their belated investigation found substantial evidence warranting Charney's termination, the Board did not immediately take steps to initiate that termination process.   Instead, the Board offered Charney a consulting position with a substantial salary of $1 million per year, comparable to the $1.07 million reported by *Businessweek* to have been his 2013 compensation.  Only when Charney did not accept this offer did the Board take the necessary step of suspending him in advance of terminating his employment with American Apparel.

36.  The Board also failed in its fiduciary duties by failing to ensure, before its meeting with Charney on June 18, 2014, that taking steps to terminate Charney would not set off a cascade of defaults on American Apparel's loans. According to *Bloomberg News*, American Apparel has a $10 million loan with Lion, the terms of which include acceleration of the loan repayment in the event of a change in management.   According to a news article published by the *Financial Times* on June 26, 2014, Lion has demanded repayment of the loan by July 4, 2014.  If American Apparel defaults on the accelerated payment, it will also default on a $50 million line of credit with Capital One Financial Corporation ("Capital One"), due to a cross-default provision.  A default on the Capital One credit line would result in the Company losing access to $20 million available under that agreement.  While the Board did apply for a waiver to Lion, which would have stopped the acceleration of the loan repayment, it did

not wait for approval of the waiver before beginning the process of terminating Charney and, since the waiver was denied, American Apparel will now have to make the accelerated payment or default on its Capital One line of credit. The Board knew or should have known of these provisions and had ample opportunity to work out a satisfactory arrangement to avoid default in the three months during which they conducted their investigation into Charney. By failing to take such measures before taking steps to terminate Charney, the Board has created a risk that American Apparel will become bankrupt or insolvent.

37. On June 27, 2014, Charney stated in a filing with the Securities and Exchange Commission that he intended to increase his stake in the Company pursuant to an agreement with Standard General, L.P. ("Standard General"), another of the Company's largest stockholders, which provides that if Standard General acquires at least 10% of the Company's outstanding shares, it will lend Charney the funds to buy the stock. In response, the Board announced on June 28, 2014, that it had adopted a one-year stockholder rights plan, or "poison pill," to "limit the ability of any person or group, including Dov Charney, to seize control of the company." However, on June 30, 2014, Charney disclosed that he had acquired an additional 27.4 million shares of American Apparel stock, increasing his holdings from 27% to approximately 43% of the Company's outstanding shares as of June 27, 2014, close to the critical 50% benchmark at

which he can push for his reinstatement.  Charney's acquisition predated the Board's adoption of the poison pill.  Rather than adopt the poison pill as soon as Charney was suspended, the Board failed to implement the poison pill in time to block Charney's acquisition of a significant additional stake in the Company.

38.  By permitting Charney's misconduct and mismanagement of American Apparel over a period of years as the Company's financial condition and stock price deteriorated, by failing to ensure, before suspending Charney, that American Apparel would not default on its loans, and by failing to take defensive measures before Charney increased his stake, the Board breached their fiduciary duties.

## DERIVATIVE ALLEGATIONS

39.  Plaintiff brings this action derivatively in the right and for the benefit of American Apparel to redress injuries suffered, and to be suffered, by American Apparel and its stockholders as a direct result of the breaches of fiduciary duty by the Defendants.  American Apparel is named as a nominal defendant solely in a derivative capacity.

40.  Plaintiff has not made any demand on American Apparel to institute this action because such a demand would be a futile, wasteful, and useless act for all of the following, among other, reasons:

(a)    The Defendants control American Apparel and cannot act with independence and disinterestedness in considering a demand;

(b)     Defendant Charney is personally responsible for, or directly oversaw, many of the acts complained of herein.  He also personally benefitted from much of his wrongdoing at the expense of the Company.  The other Board members also benefitted at the expense of the Company.  They each ensured their re-election to the Board by failing to take reasonable and prudent action to prevent Charney's acts of misconduct and the substantial damages caused to the Company thereby;

(c)     American Apparel Apparel has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Defendants have not attempted to recover for American Apparel the damages American Apparel suffered or will suffer thereby;

(d)     In order to bring this action for breach of fiduciary and common law duties, the members of the American Apparel Board would have been required to sue themselves and/or their fellow directors, with whom they have entangling interests, which they would not do.  Specifically, the Defendants are dependent on Defendant Charney for his votes as the largest shareholder in order to continue in their positions as members of the Board and so have an interest in disputing the complaint to remain in Defendant Charney's good favor. The Defendants have shown their inclination to court Charney's good favor because, even though they had more than sufficient reason to terminate Charney's employment for cause, they offered him a consulting position for several million

dollars and a severance package.  It was only when he declined this offer that they chose to initiate a process to terminate his employment;

(e)     Publicly-traded companies, such as American Apparel, typically carry Director & Officer liability insurance from which American Apparel could potentially recover some or all of its losses.  However, such insurance typically contains an "insured vs. insured" disclaimer that would foreclose a recovery therefrom in the event that American Apparel sues to recover its damages from the Defendants; and

(f)     The Defendants were aware of, but failed to investigate, numerous red flags of illegal or improper conduct and, had they done so, could have taken – and were required to take – timely action to prevent, or at least minimize, the damages caused.

## FIRST CAUSE OF ACTION
### Breach of Fiduciary Duty

41.  Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

42.  The Defendants owed and owe American Apparel and its stockholders fiduciary obligations.  By reason of their fiduciary relationships, these Defendants owed and owe American Apparel the highest obligation of good faith, fair dealing, loyalty, and due care.

43. The Defendants owed and owe American Apparel and its stockholders fiduciary obligations.  By reason of their fiduciary relationships, these Defendants owed and owe American Apparel the highest obligation of good faith, fair dealing, loyalty, and due care.

44. As a direct and proximate result of the Defendants' failure to perform their fiduciary obligations, American Apparel has sustained significant damages.  As a result of the misconduct alleged herein, the Defendants are liable to American Apparel and its stockholders.

45. Plaintiff, on behalf of American Apparel, has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff, on behalf of American Apparel and its stockholders, be fully protected from the immediate and irreparable injury that the Defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION
### Indemnification

46. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

47. As alleged herein, the Defendants, acting as directors of American Apparel, breached their fiduciary duties to American Apparel and its stockholders.

48. American Apparel has suffered significant and substantial injury as a direct result of the Defendants' breaches of their fiduciary duties as alleged

herein.  Plaintiff, on behalf of the Company, seeks relief from the Defendants on the theory of indemnity for all damages that occurred as a result of Defendants' violations of their fiduciary duties.

### THIRD CAUSE OF ACTION
### Aiding and Abetting

49.  Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

50.  Defendants have acted and are acting with knowledge of or with reckless, or grossly negligent, disregard to the fact that the Defendants are in breach of their fiduciary duties to American Apparel, and have participated in such breaches of fiduciary duties.

51.  Defendants have knowingly aided and abetted each other in committing the wrongdoing alleged herein.

52.  Plaintiff has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor and on behalf of American Apparel, and against Defendants as follows:

A.   Against all of the Defendants and in favor of the Company and its stockholders for the amount of damages sustained by the Company and its stockholders as a result of the Defendants' breach of fiduciary duties;

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

B.    Extraordinary equitable and/or injunctive relief as permitted by law, equity, and statutory provisions sued hereunder;

C.    Declaring that Defendants have breached their fiduciary duties, or aided and abetted such breach, to American Apparel and its stockholders;

D.    Requiring Defendants to remit to American Apparel all of their salaries, fees, unit awards, and other compensation for the periods when they breached their duties;

E.    Awarding Plaintiff costs, expenses and disbursements in connection with this action, including reasonable attorneys' fees, experts' and consultants' fees and expenses and, if applicable, pre-judgment and post-judgment interest; and

F.    Awarding Plaintiff such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated: July 7, 2014                         **WEISSLAW LLP**
                                            Leigh A. Parker


                                            By:   /s/ Leigh A. Parker
                                                  Leigh A. Parker
                                            1516 South Bundy Drive, Suite 309
                                            Los Angeles, CA 90025
                                            Telephone:  310/208-2800
                                            Facsimile:   310/209-2348
                                                  -and-

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1

David C. Katz
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

2

3

*Attorneys for Plaintiff Tammy G. Federman*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 21 -

**VERIFICATION**

I, TAMMY G. FEDERMAN, declare under penalty of perjury as follows:  I have read the annexed Verified Shareholder Derivative Complaint, know the contents thereof, and the same are true and accurate to the best of my personal knowledge, information, and belief, based upon the investigation of my counsel.

Executed this _1st_ day of _July_, 2014 in _Oklahoma City, OK_.

_____
TAMMY G. FEDERMAN